UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAMILLE L. MAHAR | CIVIL ACTION |
| VERSUS | NO. 20-2994-WBV-DMD |
| NATIONAL RAILROAD PASSENGER CORPORATION | SECTION: D (3) |

ORDER AND REASONS

Before the Court is Amtrak's Motion to Strike Plaintiff's Untimely Supplemental Witness and Exhibit Lists, Motion to Strike Ashley Peter as a Fact Witness And, in the Alternative, Motion in Limine to Exclude Ashley Peter's Testimony.[1] Plaintiff opposes the Motion,[2] and Amtrak has filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

I. FACTUAL AND PROCEDURAL BACKGROUND

This is an action to recover damages under the Federal Employer's Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA") for personal injuries sustained by Camille L. Mahar ("Plaintiff") while employed as a coach attendant by her railroad employer, National Railroad Passenger Corporation ("Amtrak"), and engaged in Amtrak's principal business of transporting passengers in interstate commerce.[4] Plaintiff alleges that on or about May 19, 2019, she was carrying out her duties as an Amtrak

---

[1] R. Doc. 53.
[2] R. Doc. 59.
[3] R. Doc. 73.
[4] R. Doc. 1 at ¶ 4.

coach attendant on "Train # 58, 'The City of New Orleans,' heading from New Orleans to Chicago.[5] Plaintiff alleges that after Train #58 left Marks, Mississippi, traveling on the mainline track of Canadian National Railway Company d/b/a Illinois Central Railway Company ("CN/IC"), and approximately 45 minutes outside of Memphis, Tennessee, she sustained severe neck, upper back, left shoulder, left side, and head injuries when the train suddenly and violently shifted, throwing her against the railcar wall where she was working.[6] Plaintiff claims that when she "was slammed sideways, her left side, left arm, and left shoulder struck the railcar wall, and her left elbow hit a piece of metal jutting out from a vent under the coach railcar window."[7] Plaintiff alleges that she also "sustained a brain injury causing headaches, migraines, cognitive difficulty, disequilibrium, and visual disturbances due to the force of the violent shift, and possible head and face contact with the railcar wall."[8]

On November 4, 2020, Plaintiff filed a Complaint for Damages in this Court against Amtrak based upon the May 19, 2019 incident.[9] Plaintiff alleges that her injuries were caused by the negligence of Amtrak, its officers, employees, and agents, and in violation of FELA because Amtrak violated its duty to provide a safe place to work. Plaintiff also alleges that Amtrak is liable for any negligence by CN/IC and/or the railroad entity who owned and maintained the mainline tracks upon which she was injured, since CN/IC was acting as Amtrak's agent.[10] Plaintiff seeks several

---

[5] *Id.* at ¶ 6.
[6] *Id.* at ¶ 7.
[7] *Id.*
[8] *Id.*
[9] R. Doc. 1.
[10] *Id.* at ¶¶ 9-11.

categories of damages, including past and future physical pain and suffering, potential permanent disability, past and future lost wages, and loss of earning capacity.[11]

The Court issued a Scheduling Order on January 28, 2021, setting forth the pretrial deadlines in this matter, which was subsequently amended with respect to the discovery deadline at the joint request of the parties.[12] During a Telephone Status Conference held on August 2, 2021, the Court granted an oral motion by Amtrak for an extension of deadlines, including the trial and pretrial conference dates, finding good cause existed under Fed. R. Civ. P. 16 to amend the Scheduling Order.[13] As such, the Court issued an Amended Scheduling Order on August 17, 2021, which included a November 26, 2021 deadline for the parties to file their witness and exhibit lists.[14] Plaintiff timely-filed a Witness and Exhibit List on November 23, 2021,[15] and Amtrak timely-filed its Witness and Exhibit List on November 24, 2021.[16] Thereafter, the parties jointly moved for a telephone status conference with the Court, which the Court granted.[17] During the conference, and after finding that good cause existed under Rule 16 to amend the Amended Scheduling Order, the Court issued an oral Order continuing the discovery deadline and the deadline for filing pretrial motions.[18] The Order indicated that "all other

---

[11] *Id.* at ¶¶ 11-14.
[12] *See*, R. Docs. 10, 12, & 13.
[13] R. Doc. 22.
[14] R. Doc. 24 at pp. 1-2.
[15] R. Doc. 35.
[16] R. Doc. 36.
[17] *See*, R. Docs. 37 & 39.
[18] *See*, R. Doc. 40.

deadlines in the Amended Scheduling Order remain in effect."[19] On January 10, 2022, and without first seeking leave of Court to do so, Plaintiff filed a First Supplemental and Amended Witness and Exhibit List, listing "Ashley Peter – Friend of Plaintiff" as an additional individual who "may, or will testify" as a fact witness in this case.[20] Four days later, on January 14, 2022, again without first seeking leave of Court to do so, Plaintiff filed a Second Supplemental and Amended Witness and Exhibit List, again naming Peter as a fact witness, and also naming "Stephen Hines – Amtrak Engineer" as an additional individual who may testify as a fact witness in this case.[21]

Amtrak filed the instant Motion to Strike on January 31, 2022, seeking to strike Plaintiff's two amended witness and exhibit lists under Fed. R. Civ. P. 16, 26, and 37 because they were filed without leave of Court well beyond the November 26, 2021 deadline set by the Court.[22] Amtrak also seeks to strike Ashley Peter as a fact witness because she was not disclosed as a witness until January 10, 2022. Amtrak points out that Peter was mentioned in Plaintiff's June 21, 2021 deposition, but she was not identified as a person who had any information relevant to this case and was not listed on Plaintiff's witness list that was timely-filed five months later on November 23, 2021.[23] Amtrak contends that, as a friend of Plaintiff, Peter should

---

[19] *Id.*
[20] R. Doc. 42 at p. 2. *Compare* to R. Doc. 35 at pp. 1-2.
[21] R. Doc. 43 at p. 2. The Court notes that neither party addresses the addition of Hines as a fact witness on Plaintiff's Second Supplemental and Amended Witness and Exhibit List or his ability to testify at trial.
[22] R. Doc. 53 at p. 1.
[23] *Id.*; R. Doc. 53-1 at pp. 1-2.

have been and was known to Plaintiff well before November 23, 2021.[24] Alternatively, if the Court denies Amtrak's request to strike Plaintiff's untimely witness lists and request to strike Peter as a fact witness, Amtrak asserts that Peter's testimony should be excluded as inadmissible hearsay, cumulative, and not relevant or reliable.[25]

Amtrak seems to suggest that Plaintiff is trying to add Peter as a witness in response to Amtrak providing Plaintiff an amended report from Dr. Archie Melcher on January 3, 2022.[26] In that report, Dr. Melcher noted that the first mention of any head injury stemming from the underlying incident was on September 18, 2019, when Plaintiff told Dr. Sharett that she was experiencing cognitive difficulties and disequilibrium since the May 19, 2019 incident.[27] Amtrak asserts that on January 6, 2022, Plaintiff obtained a recorded statement from Peter regarding a never before revealed telephone call that Plaintiff made to Peter after the May 19, 2019 incident, in which Peter appears to offer a new and different medical history of Plaintiff's injury that Plaintiff never provided to any of her medical providers or anyone else, all of which is hearsay.[28] Amtrak notes that, since the filing of her two supplemental witness and exhibit lists, Plaintiff has unilaterally attempted to set Peter's deposition several times over Amtrak's objection.[29]

---

[24] R. Doc. 53-1 at p. 1.
[25] R. Doc. 53 at p. 2; R. Doc. 53-1 at p. 2.
[26] R. Doc. 53-1 at p. 3.
[27] *Id.*
[28] *Id.* at p. 3.
[29] *Id.*

Amtrak argues that the two amended witness lists should be stricken as untimely under Fed. R. Civ. P. 16, 26, and 37, as well as the clear language in the Scheduling Order that, "The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown."[30] Amtrak argues that all four factors used by this Court in determining whether to exclude witnesses or evidence weigh in favor of striking Plaintiff's two amended witness lists and Peter because: (1) Peter's testimony is not important to Plaintiff's case, as it is plainly inadmissible; (2) the late addition of Peter as a witness would be prejudicial to Amtrak, who would need to depose both Peter and Plaintiff's treating physicians regarding this information in the midst of preparing for trial; (3) the Court should not consider another continuance to cure the prejudice; and (4) there is no reasonable explanation for Plaintiff's failure to timely disclose Peter as a witness.[31] Alternatively, Amtrak argues that Peter's testimony regarding her purported telephone conversation with Plaintiff shortly after the accident should be excluded as inadmissible hearsay, cumulative, and unreliable.[32]

In opposing the Motion, Plaintiff claims that she called Peter shortly after the May 19, 2019 incident and that, to date, Plaintiff neither remembers making that phone call nor the substance of what was discussed.[33] Plaintiff asserts that when she filed her witness list on November 23, 2021, no party to this case knew that Peter had

---

[30] *Id.* at p. 5 (*quoting* R. Doc. 24).
[31] R. Doc. 53-1 at pp. 6-8.
[32] R. Doc. 53-1 at pp. 9-11.
[33] *Id.* at p. 2.

information material or relevant to the case. Plaintiff claims what, while preparing for trial and continuing to investigate Plaintiff's injuries and medical treatment, her counsel spoke to Peter and learned from Peter that Plaintiff called her shortly after the accident and told Peter that she hit her head during the accident, was feeling dizzy, and was shaken up.[34] According to Plaintiff, upon learning this information, her counsel took a recorded statement of Peter on January 6, 2022, and sent the audio recording to defense counsel on January 7, 2022, along with a settlement demand and a request for dates to take Peter's deposition.[35] Plaintiff avers that, after receiving no response from Amtrak, her counsel sent another email on January 10, 2022 to schedule Peter's deposition, and filed her First Supplemental and Amended Witness and Exhibit List on that date.[36] Plaintiff then details several email exchanges between her counsel and counsel for Amtrak in January 2022 about scheduling Peter's deposition, including a January 13, 2022 email in which her counsel "informed Defense counsel of the supplemented witness list that was filed within the discovery period."[37]

Plaintiff asserts that the Motion should be denied because the four factors that this Court must consider weigh against striking Peter as a witness.[38] Plaintiff argues that Peter's testimony is "critical" because Plaintiff is unsure if she hit her head during the May 19, 2019 incident. Plaintiff asserts that she suffered a brain injury –

---

[34] *Id.* (*citing* R. Doc. 59-2 at p. 2).
[35] R. Doc. 59 at p. 2 (*citing* R. Doc. 59-3 at pp. 1-2).
[36] R. Doc. 59 at pp. 2-3.
[37] *Id.* at pp. 3-4 (*citing* R. Doc. 59-3 at p. 7).
[38] R. Doc. 59 at pp. 1 & 5-10.

post-concussion syndrome and vestibular dysfunction – a symptom of which is memory loss. Plaintiff claims Peter is the only person who can attest to the conversation that took place immediately after the incident.[39] As to the second factor, Plaintiff asserts that Amtrak has suffered no prejudice because Amtrak claims that Peter's testimony is not important to the case and Plaintiff's Complaint alleged a brain injury, migraines, cognitive difficulty, disequilibrium, and visual disturbances.[40] Plaintiff claims that Amtrak was effectively put on notice that Peter may be a witness because Peter was mentioned several times during Plaintiff's deposition.[41] Plaintiff contests Amtrak's assertion that Plaintiff is using this new information to influence her treating physicians, and asserts that she became aware of her conversation with Peter "only days before her appointment with Dr. Arriaga on January 11, 2022," which is why she disclosed it to him.[42] Regarding the third factor, Plaintiff asserts that a continuance is warranted based solely upon the fact that she is still treating for her injuries, and further claims that a continuance would cure any prejudice to Amtrak.[43] As to the fourth factor, Plaintiff seems to assert that her First and Second Supplemental and Amended Witness and Exhibit Lists were not untimely because her November 23, 2021 witness list contains several reservations of rights, including that Plaintiff "reserves the right to call any witness not yet revealed or who is revealed through ongoing discovery."[44] Relying upon that

---

[39] *Id.* at pp. 5-6.
[40] *Id.* at p. 6.
[41] *Id.* at pp. 6-7 (*citing* R. Doc. 53-1 at p. 8).
[42] R. Doc. 59 at p. 7.
[43] *Id.*
[44] *Id.* at p. 8 (*quoting* R. Doc. 59-1).

provision, Plaintiff contends that because Peter was discovered in the course of discovery and Plaintiff supplemented her witness and exhibit list before the close of discovery, "it was not necessary for Plaintiff to supplement her witness and exhibit list. Plaintiff merely did so out of an abundance of caution."[45]

Plaintiff further asserts that the admissibility of Peter's testimony should be decided at trial, since Peter has not yet been deposed.[46] Plaintiff contends that Peter's anticipated testimony is admissible under Fed. R. Evid. 803(2) and (3), two exceptions to the hearsay rule, because it relates to an excited utterance by Plaintiff and Plaintiff's then-existing mental, emotional, or physical condition.[47] Plaintiff also claims that Peter's anticipated testimony is relevant, reliable, and not cumulative, since she is the only witness attesting to the post-accident phone call with Plaintiff.[48] As such, Plaintiff argues that the Motion should be denied.

In response, Amtrak points out that Plaintiff offers no explanation as to how and why she only now identified this "friend" and alleged "critical" witness who had not been previously or timely disclosed to Amtrak, and that Plaintiff fails to disclose when, and why, her counsel first communicated with Peter.[49] Amtrak contends that this explanation, or lack thereof, raises more questions than it provides answers, including how and why Peter was identified and contacted at that time, why this investigation was not conducted sooner, and why Plaintiff did not know about this

---

[45] R. Doc. 59 at pp. 9 & 9-10.
[46] *Id.* at p. 10.
[47] *Id.* at pp. 10-11.
[48] *Id.* at pp. 11-12.
[49] R. Doc. 73 at p. 1.

alleged information sooner.[50]  Amtrak argues that Plaintiff attempts to paint Peter's testimony as critical due to Plaintiff's late realization that she lacks evidence to prove her alleged brain injuries.  Amtrak asserts that its expert, Dr. Melcher, pointed out this lack of evidence regarding a mechanism of injury in his amended report provided to Plaintiff on January 3, 2022, at which point Peter "was suddenly and remarkably located and identified as having that very information, despite the fact that she was not on the train and has no personal knowledge of what happened."[51]  Amtrak emphasizes that Plaintiff has admitted that she is unsure if she hit her head during the accident, Plaintiff did not mention that she hit her head to any of Amtrak's employees on the train or to her treating physicians, and that Dr. Melcher pointed out that Plaintiff did not mention a head injury until September 18, 2019, when she informed one provider that she was unsure if she hit her head.[52]  Amtrak claims that Dr. Melcher noted that there was no documentation in the medical records or in the history obtained by him that Plaintiff was confused following the incident.[53]  Amtrak also points out that while Plaintiff claims to have no memory of hitting her head or her call to Peter, she has a complete and precise memory of exactly how and on what she bumped her elbow and everything she did before, during, and after the accident.[54]  Amtrak contends that Plaintiff and Peter had ample opportunity to discuss this phone call after it occurred, as Peter's recorded statement shows that they had

---

[50] *Id.*
[51] *Id.* at pp. 2-3.
[52] *Id.* at p. 3.
[53] *Id.*
[54] *Id.* at p. 4.

several telephone conversations in the months after the accident and that Plaintiff visited Peter in Texas and Washington.⁵⁵ Amtrak points out that Plaintiff has not alleged any forgetfulness as to any other telephone calls with Peter.⁵⁶ Amtrak maintains that it would be prejudiced by the late addition of Peter as a fact witness because Plaintiff has admitted that there is no other evidence that she hit her head during the accident.⁵⁷ As such, Amtrak maintains that its Motion should be granted.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(a), litigants must produce to the other parties and promptly file with the Court information pertaining to the identity of each witness they intend to or may call, and identify all exhibits they intend to introduce.⁵⁸ The scheduling order may also govern when parties are to make these disclosure.⁵⁹ "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."⁶⁰ The Fifth Circuit considers the following four factors in evaluating whether a violation of Rule 26 is harmless: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and

---

⁵⁵ *Id.*
⁵⁶ *Id.* at p. 5.
⁵⁷ *Id.*
⁵⁸ Fed. R. Civ. P. 26(a)(3)(A).
⁵⁹ Fed. R. Civ. P. 16(b); Fed. R. Civ. P. 26(a)(3)(B).
⁶⁰ Fed. R. Civ. P. 37(c)(1).

(4) the explanation for the party's failure to disclose.[61] The Fifth Circuit considers the same four factors when determining whether to exclude witnesses and exhibits as a sanction for violating a Rule 16 scheduling order.[62]

### III. ANALYSIS

#### A. Plaintiff Has Failed to Show That Her Failure to Comply With Fed. R. Civ. P. 26(a) Was Substantially Justified Or Harmless.

Here, Plaintiff filed her First and Second Supplemental and Amended Witness and Exhibit Lists on January 10, 2022 and January 14, 2022, respectively, a month and a half after the November 26, 2021 deadline set forth in the Court's Amended Scheduling Order,[63] without leave of Court and without providing good cause for the delay at the time of the filing. The Court notes that the trial in this matter has been continued twice at the parties' request[64] and once on the Court's own motion,[65] discovery closed on January 21, 2022,[66] and the trial is currently set for September 6, 2022.[67] The Court further notes that on February 7, 2022, Plaintiff moved to continue the trial and certain pretrial deadlines on February 7, 2022, on the basis that Plaintiff is still undergoing medical treatment for her brain injury.[68] The Court

---

[61] *Texas A&M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)).
[62] *Williams v. American Strategic Ins. Corp.*, Civ. A. No. 13-5411, 2014 WL 1246846, at *1 (E.D. La. Mar. 25, 2014) (Africk, J.) (citing *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).
[63] *See,* R. Docs. 42, 43, & 24.
[64] R. Docs. 10, 22, 24, & 88.
[65] R. Doc. 93.
[66] R. Doc. 94.
[67] R. Doc. 88.
[68] R. Doc. 60.

denied the motion on February 11, 2022, finding that Plaintiff had failed to show good cause for the continuance.[69]

At the outset, the Court notes that while Plaintiff seems to suggest that her two amended witness and exhibit lists were timely-filed based upon certain reservations of rights contained in Plaintiff's November 23, 2021 witness list and because they were filed within the discovery period,[70] that argument ignores the plain language of the Court's Amended Scheduling Order. The Amended Scheduling Order, issued on August 17, 2021, clearly requires that, "Counsel for the parties shall file in the record and serve upon their opponents a list of all witnesses who may or will be called to testify at trial and a list of all exhibits which may or will be used at trial no later than **November 26, 2021**."[71] The Amended Scheduling Order further provides that, "The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown."[72] Plaintiff's Opposition brief is devoid of any legal authority indicating that reservations by parties contained in a witness list can somehow supersede the pre-trial deadlines set by this Court or that the filing of a witness list during the discovery period trumps a specific Court-imposed deadline. Thus, it is clear to the Court that Plaintiffs' First and Second Supplemental and Amended Witness and Exhibit Lists were untimely-filed under the Court's Amended Scheduling Order.

---

[69] R. Doc. 75.
[70] R. Doc. 59 at pp. 3 & 8-10.
[71] R. Doc. 24 at p. 1 (emphasis in original).
[72] *Id.* at p. 2.

As previously discussed, the Court must analyze four factors to determine whether Plaintiff's violation was harmless or substantially justified so as to allow the late-filed witness lists. Regarding the importance of the evidence, Plaintiff describes Peter's testimony as "critical" because she is the only person who can attest to the conversation she had with Plaintiff immediately after the accident. While Peter's testimony could help Plaintiff prove that she sustained a head injury as a result of the May 19, 2019 incident, "[t]he importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders." [73] Additionally, if the evidence was important, Plaintiff should have sought an extension of the deadline to file witness and exhibit lists,[74] "or at least informed the Court in advance if good faith compliance was not possible."[75] As such, the Court finds this factor weighs slightly against excluding Ashley Peter as a fact witness at trial.

Turning to the second factor, the Court finds that Amtrak will clearly be prejudiced by the late addition of Peter as a fact witness in this case. The Court finds this factor significant. Plaintiff did not name Peter as a potential fact witness until January 10, 2022, a mere week before the discovery deadline[76] and on the eve of a March 14, 2022 trial date.[77] According to Amtrak, Plaintiff is now disclosing her conversation with Peter to her medical providers, including Dr. Alberto Moises

---

[73] *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)) (internal quotation marks omitted).
[74] *Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 347 (E.D. La. 2016) (Barbier, J.).
[75] *Barrett*, 95 F.3d at 381.
[76] R. Doc. 40.
[77] R. Doc. 24. The Court recognizes that on February 28, 2022, the Court granted Plaintiff's Motion to Continue the trial, allowing for a short continuance until April 25, 2022 (R. Doc. 88). The Court subsequently continued the trial due to a conflict on April 11, 2022 (R. Doc. 93). The trial is now set for September 6, 2022 (R. Doc. 94).

Arriaga, a fact that Plaintiff readily admits.[78] As Amtrak points out, if Peter is allowed to testify at trial, not only will she need to be deposed, Plaintiff's medical providers will also need to be deposed about this new information and how it affects their diagnosis, which will require consideration by Amtrak's existing experts and may even require the retention of new experts. All of this will greatly increase the costs of litigation in this matter.

The Court agrees with Amtrak that Plaintiff should not be granted a "do-over" after years of work, several extensions of time, and on the eve of trial based upon Plaintiff's lack of diligence and failure to timely identify and disclose a questionable fact witness that Plaintiff knew about well before now. According to the portion of the Statement Transcript For Ashley Peter, submitted by Plaintiff, Peter and Plaintiff talk "on average at least 3 to 4 times a month" and Peter considers Plaintiff to be "a sister."[79] The Court cannot turn a blind eye to the fact that Plaintiff claims she only just learned of her phone call to Peter shortly after the May 19, 2019 incident, when she has likely spoken to Peter approximately 60 to 80 times since then, traveled to see her at least twice in other states, and had ample opportunity to discuss this issue. Because the Court finds that allowing Peter to testify at trial would significantly prejudice Amtrak, the second factor weighs in favor of excluding Ashley Peter as a fact witness at trial.

As to the third factor, whether a continuance could cure the prejudice, this matter was filed on November 4, 2020 and the Court has already granted several trial

---

[78] R. Doc. 53-1 at pp. 6-7; R. Doc. 59 at p. 7.
[79] R. Doc. 59-2 at p. 2.

continuances, including a recent continuance granted on April 13, 2022.[80] Despite the additional time previously provided, Plaintiff has failed to timely prepare her case. Moreover, on February 11, 2022, the Court specifically denied Plaintiff's motion to continue trial that was premised on the fact that she is still treating for her head injuries, finding that Plaintiff had failed to show good cause to continue the trial date.[81] The Court now finds any further trial continuance would create an unnecessary, additional delay and would unnecessarily increase Amtrak's expense of defending the litigation.[82] Moreover, granting a continuance would only serve to reward Plaintiff for missing the witness and exhibit list deadline.[83] As cautioned by the Fifth Circuit, "A continuance does not, in and of itself, 'deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders.'"[84] Nonetheless, because the matter has been continued until September 6, 2022, the Court concludes that this factor weighs slightly against excluding Ashley Peter as a fact witness at trial.

Finally, and most importantly, the Court finds that Plaintiff has utterly failed to provide a reasonable explanation or justification for her failure to timely disclose Peter as a witness. The Court finds this factor significant in this case. While the parties agree that Peter was mentioned during Plaintiff's June 21, 2021 deposition,

---

[80] R. Doc. 93.
[81] R. Doc. 75. *See*, R. Doc. 60. In a subsequent conference with counsel, and for the reasons stated during the conference, the Court granted a short trial continuance until April 25, 2022. *See* R. Doc. 88. On April 11, 2022, the Court granted another continuance due to a conflict, and reset the trial for September 6, 2022. (R. Docs. 93 & 94).
[82] See, *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996); *Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 347 (E.D. La. 2016).
[83] *Perez*, 173 F. Supp. 3d at 347.
[84] *Barrett*, 95 F.3d at 381 (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)).

Plaintiff offers no explanation for what prompted her counsel to speak to Peter prior to taking her recorded statement on January 6, 2022, or when that initial conversation took place. Like Amtrak,[85] it was not lost on the Court that Plaintiff's only explanation for her counsel's recent communication with Peter is the following:

> While preparing for trial and continuing the investigation into Camille's injuries and medical treatment, undersigned counsel spoke to Camille's friend, Ashley Peter. Surprisingly, undersigned counsel learned from Ms. Peter that Camille called Ms. Peter shortly after the accident and told Ms. Peter she hit her head in the accident, was feeling dizzy, and was shaken up. Upon learning this information, undersigned counsel took a recorded statement of Ms. Peter on January 6, 2022.[86]

The Court agrees with Amtrak that this "explanation," or lack thereof, raises more questions than it answers, including why this conversation with Peter did not occur sooner and, specifically, immediately after Peter was mentioned "several times" during Plaintiff's June 21, 2021 deposition.[87] It is evident to the Court that Plaintiff took no steps to determine whether Peter had any relevant information until Plaintiff was confronted with evidence from Amtrak, in the form of a supplemental expert report provided on January 3, 2022, which questioned whether there was evidence to support her alleged head injury.[88] The Court agrees with Amtrak that Plaintiff has not provided any reasonable explanation as to why Plaintiff decided to take a recorded statement from Peter in January, and that Amtrak should not be prejudiced by that lack of diligence and the late added witness. Accordingly, the Court finds this factor weighs in favor of excluding Ashley Peter as a fact witness at trial.

---

[85] R. Doc. 73 at p. 1.
[86] R. Doc. 59 at p. 2.
[87] *Id.* at pp. 6-7 (*citing* R. Doc. 53-1 at p. 8).
[88] *See*, R. Doc. 53-1 at p. 3; R. Doc. 73 at pp. 2-4, & 7.

Based on the foregoing four-factor analysis, the Court finds that a majority of the factors weigh in favor of excluding Ashley Peter from testifying at trial because Plaintiff's Rule 26 violation was not harmless or substantially justified. Accordingly, Plaintiff's First and Second Supplemental and Amended Witness and Exhibit Lists shall be stricken from the record and Plaintiff is precluded from calling Ashely Peter as a fact witness at trial.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Amtrak's Motion to Strike Plaintiff's Untimely Supplemental Witness and Exhibit Lists, Motion to Strike Ashley Peter as a Fact Witness And, in the Alternative, Motion in Limine to Exclude Ashley Peter's Testimony[89] is **GRANTED**. Plaintiff's First Supplemental and Amended Witness and Exhibit List, filed on January 10, 2022,[90] and Plaintiff's Second Supplemental and Amended Witness and Exhibit List, filed on January 14, 2022,[91] are hereby **STRICKEN** from the record. **IT IS FURTHER ORDERED** that Plaintiff is precluded from calling Ashley Peter as a fact witness at the trial of this matter.

New Orleans, Louisiana, April 13, 2022.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[89] R. Doc. 53.
[90] R. Doc. 42.
[91] R. Doc. 43.